SOUTHWICK, P.J,
for the Court:
¶ 1. Christine Hogan was found guilty by a Leflore County Circuit Court jury of selling crack cocaine. On appeal she asserts that the court should have struck a juror for cause and that there is not sufficient evidence to support a guilty verdict, or at least that the verdict is against the *59 great weight of the evidence. We disagree with all allegations of error and affirm.
FACTS
¶ 2. On September 26, 1996, Mississippi Bureau of Narcotics agent Jeffery Mitchell bought crack cocaine from Christine Hogan at her home after setting up the sale by telephone. Mitchell was working undercover and had met Hogan the day before in Grenada, discussing a cocaine purchase with her. When he called her the next day to get directions to her house and to discuss the purchase price, Mitchell recorded the conversation. Wearing a body wire and assisted by two other narcotics agents who monitored and recorded the transaction from a nearby automobile, Mitchell paid $500 in marked bills for a foil package of crack cocaine that Hogan represented as about half an ounce (17.5 grams), although it later turned out to be 1.5 grams. After a jury trial based on this sale, Hogan was convicted and has appealed. By order the supreme court deflected the appeal here.
DISCUSSION

1. Failure to strike prospective juror Rita Randall for cause.

¶ 3. During the trial court’s voir dire, potential juror Rita Randall stated that she had spoken with Hogan a week or two earlier when Hogan was a patient at the clinic where Randall worked as a nurse. Ms. Randall said that Hogan had informed her that she was in jail, charged with sale of cocaine. The juror stated that she could be impartial despite this previous contact
BY JUROR: She is the patient of the doctor that I work for, and she was telling me about what had gone on, what she had done.
BY THE COURT: Would what she has told you, could it affect your judgment in deciding this case?
BY JUROR: No, I don’t think it would.
BY THE COURT: You don’t think it would?
BY JUROR: I really don’t.
BY THE COURT: You could lay it aside completely and decide the case on what you hear from the witness stand?
BY JUROR: I think so, yeah.
BY THE COURT: Do you consider anything that she may have told you to be a fact which it would take another witness to dislodge this from your mind?
BY JUROR: Not really because I thought she was more or less trying to get my sympathy. She had been in jail for a good while, because this was last week or week before last.
BY THE COURT: Can you stand there under your oath and tell them and tell me that you know that this would not in any way affect judgment in deciding her guilt or innocence?
BY JUROR: No. I would listen to the witnesses, and I don’t think it would.
¶4. Hogan challenged Ms. Randall for cause, but the challenge was denied. As a result Hogan used a peremptory challenge to strike the woman. She ultimately used all her peremptory challenges, the last one after she accepted the tenth juror. The only statement in her brief as to the harm caused by these events is that “she was unable to make challenges to jurors which may not have been impartial.” However, no other juror is denounced as impartial and who served only because of the alleged squandering of a peremptory challenge on Randall.
¶ 5. Jurors’ promises to follow the law are to be given great deference. Porter v. State, 616 So.2d 899, 906 (Miss. 1993). Once a juror has given that assurance, the presumption is that the juror should be retained. Armstrong v. State, 214 So.2d 589, 593 (Miss.1968).
¶ 6. The principal case cited by Hogan certainly requires an impartial jury, but it also states this:
*60 Chisolm fails a threshold test. Prerequisite to presentation [of] such a claim on appeal is a showing that he had exhausted all of his peremptory challenges and that the incompetent juror was forced upon him by the trial court’s erroneous ruling. No such showing may be made in this case, for Chisolm did in fact strike Woodard peremptorily.
Chisolm v. State, 529 So.2d 635, 639 (Miss.1988) (emphasis added).
¶ 7. A more recent decision by the supreme court reiterated that the focus on appellate review is whether an accused was tried by an impartial jury. Edwards v. State, 737 So.2d 275, 309 (Miss.1999). The impartiality of a jury is not measured by whether a strike for cause was improperly denied or a peremptory challenge unnecessarily required, but on whether for those reasons a juror whose fairness legitimately could be questioned was permitted to serve.
¶ 8. We need not decide whether the trial judge’s failure to remove Randall for cause was error. Hogan’s evidentiary failure regarding possible incompetence of another juror who did serve means that any error was harmless.

II. Weight and sufficiency of the evidence.

¶ 9. Hogan’s motion for a directed verdict, her peremptory jury instruction, and her motion for a new trial or, in the alternative, a judgment notwithstanding the verdict, all were denied by the trial court. Her assertions of error'with regard to these rulings question both the weight and the sufficiency of the evidence. Those will be treated here together.
¶ 10. Motions for directed verdicts, peremptory instructions, and judgments notwithstanding the verdict test the sufficiency of the evidence. When an appellate court reviews the evidence presented at trial from this perspective, a defect is shown if reasonable and fair-minded jurors could have only found the defendant not guilty of the charges. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 11. A different standard applies in our review of whether a verdict is against the overwhelming weight of the evidence. Then we must accept as true the evidence supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice. Eakes v. State, 665 So.2d 852, 872 (Miss.1995).
¶ 12. The jury in this case was presented with the testimony of narcotics agent Jeffery Mitchell, who stated that he set up the cocaine purchase in person and on the telephone, received directions to Hogan’s house, then went to her house and completed the buy. Narcotics agent Adrian Armón testified that he and another agent provided surveillance from a nearby automobile. He testified that he heard the transaction as it was taking place through transmissions from the body wire that agent Mitchell wore. Tape recordings of both the telephone conversation setting up the buy and the actual transaction were introduced into evidence and played for the jury. The substance that Mitchell purchased from Hogan was tested at the Mississippi Crime Laboratory, and competent evidence was introduced that it was cocaine. Hogan presented no witnesses.
¶ 13. The specific area of alleged eviden-tiary deficiency is whether the audiotapes authenticated by Mitchell and played for the jury actually were of a conversation with Hogan and not with someone else. The State may introduce a recording of a drug transaction during trial, if the tape is properly authenticated. M.R.E. 901. The rule includes the following in a list of what are called “illustrations” of valid means to authenticate:
(6)Telephone conversations. Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a *61 particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (B) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.
M.R.E. 901(b).
¶ 14. Hogan argues that the failure to show that the number called was hers prevents the tape from being properly authenticated. However, the Rule itself states that the example quoted above is given “[b]y way of illustration only, and not by way of limitation....” M.R.E. 901(b). Consequently the failure to show the phone number for the call is not fatal. In his testimony, agent Mitchell described the manner in which the recordings were made. He testified that he had listened to the tapes, and the tapes accurately reflected what he had heard over the telephone and during the transaction inside Hogan’s house. He testified that the voice on the tapes was that of the defendant, and that the telephone number he dialed was the one given him by the Hogan the day before the drug purchase. The agent also testified that the tapes had been kept in his custody or in a vault after the incident until trial. That is more than adequate to show “that the matter in question is what its proponent claims.” M.R.E. 901(a).
¶ 15. If a recording is relevant and properly authenticated, it is admissible. Middlebrook v. State, 555 So.2d 1009, 1011-12 (Miss.1990). Both of those requirements were met here.
¶ 16. There was evidence to support each element of the offense for which Hogan was prosecuted, and that evidence of guilt was not overcome by a decided preponderance of the contrary evidence. No evidentiary shortcomings are shown in this conviction.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDER TO PAY A FINE OF $250,000 AND ALL COURT COSTS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.